UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARLOS FAYNE, | ) | 1:05CV2328 |
| | ) | |
| Petitioner | ) | JUDGE PATRICIA GAUGHAN |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| v. | ) | |
| | ) | |
| KHELLEH KONTEH, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND RECOMMENDED |
| | ) | <u>DECISION OF MAGISTRATE JUDGE</u> |

McHARGH, MAG. J.

The petitioner Carlos Fayne ("Fayne") has filed a petition pro se for a writ of habeas corpus regarding his 2003 felony convictions for murder, attempted murder, felonious assault and kidnapping, in the Cuyahoga County, Ohio, Court of Common Pleas.  (Doc. 1.)  Fayne raises four grounds for relief in his petition:

1.  Ineffective assistance of counsel.

2.  The petitioner was denied due process of law, as guaranteed by the U.S. Constitution and Ohio Constitution.

3.  The petitioner was denied his right to self representation pursuant to Sixth and Fourteenths [*sic*] to the U.S. Constitution.

4.  The trial court erred when it refused to sever the indictment.

(Doc. 1, §§12.A.-12.D.)

The respondent argues that the petition should not be granted because the claims have been procedurally defaulted.  (Doc. 9, at 11-20.)

I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

This case is about a gang war between the Crumb Street Boys and the Red Hot gang. Fayne, a member of the Red Hot gang, was charged with the attempted murder of Edward Jones on March 19, 2002, and the murder of Robert Clinton on March 21, 2002. Both Jones and Clinton were members of the rival Crumb Street gang.

Fayne was indicted in Case No. 421687 for the shooting of Edward Jones on one count of attempted murder with two firearm specifications, one count of felonious assault with two firearm specifications, having a weapon while under a disability, and one count of kidnapping with two firearm specifications.

He was also indicted in Case No. 421497 for the murder of Robert Clinton on one count of aggravated murder with three firearm specifications, and two counts of having a weapon while under a disability. The cases were consolidated for trial.

At trial, Edward Jones testified that he is a member of the Crumb Street Boys, a group of boys who hang out on Crumb Street in Cleveland. Jones' friend, Troy Baker, is also a member of the Crumb Street Boys.

According to Jones, in the late evening hours of March 18 and early morning of March 19, 2002, he and Troy were in a restaurant called the Chinese Bar. Jones testified that as he put his arm around a girl and snuggled close to her, Adrian Bolling, a member of the Red Hot gang, walked over and accused Edwards of "trying to disrespect him" because the female was his girlfriend. According to Jones, he and Bolling stood "face to face" swearing at each other, ready to fight. Fayne, who was also at the restaurant that night with several members of his gang, sat several seats down observing the incident. Security personnel escorted Jones, Bolling and their friends outside and they left the bar.

At approximately noon on March 19, Troy and his girlfriend picked up Jones at his house. Troy drove his girlfriend home and then he and Jones went back to Troy's house to pick up some articles of clothing left there by his girlfriend. When they returned to her house to drop off the clothes, Troy parked the car in an empty lot across the street and then

walked across the street to the rear of the house. Jones, who was sitting in the front passenger seat, stayed in the car.

According to Jones, as he was waiting for Troy to return, he looked up and saw Fayne and Bolling running toward the car. Fayne put a gun in Jones' face and told him to get out of the car or he was going to kill him. When Jones got out of the car, begging not to be killed, Fayne told Bolling, "take care of your business," and Bolling then hit Jones in the jaw. As Jones began running away, Fayne shot him two times. One bullet hit him in the stomach; the other bullet hit his leg, grazing his penis. Jones admitted on cross-examination that the fighting between the rival gangs started when one of the Crumb Street Boys stole drugs worth approximately $2500 from a member of the Red Hot gang.

Troy testified that he heard two shots as he opened the door to his girlfriend's house. He ran to the front of the house and saw Fayne, who had a black gun in his hand, and Bolling, running away. Troy testified that he had seen the same gun several days earlier when Bolling pulled the gun, but did not shoot it, during a fight at the Chinese Bar between several of Troy's friends and Fayne and his friends.

Cleveland police officer Frank Gerhart responded to a radio dispatch regarding the shooting. He testified that Jones told him that Fayne had shot him and, further, that he (Gerhart) found two .45 caliber spent shell casings on the street.

Bobby Lee Herris testified that, two days later, in the early afternoon of March 21, 2002, he was outside the laundromat at East 74th and Superior where he was employed. He heard a gunshot, looked across the street, and saw a young man running in the Family Dollar Store parking lot. The young man was holding his stomach with one hand and held a gun in his other hand. Herris saw him fall to the ground in the parking lot and then he heard three more gunshots. Herris did not see the victim shoot his gun.

John Reed testified that he was waiting in his car in the parking lot of the Family Dollar Store at approximately 2 p.m. on March 21, 2002, when a male ran in front of his car and began shooting. Reed got down in his seat to hide. When the shooting stopped, Reed discovered that a bullet had gone through the front windshield of his car.

Calvin Bates, a telephone installer, was pulled up to the pay phone in the parking lot of the Family Dollar Store in the early afternoon of March 21, 2002, sitting in his van and working on the phone through the driver's window when he heard gunshots. As he looked in his

passenger door mirror, he saw a young man run away from the store and then behind his truck. Bates estimated that he heard seven to nine shots and testified that the shots sounded like they came from an automatic weapon.

Cleveland police detective JoMarie Patrici testified that she responded to the scene shortly after the shooting. She found three spent shell casings on the ground and recovered a bullet pellet from the rear window ledge of Reed's car, all of which were from .45 caliber bullets.

Cleveland police officer Andrew Harasimchuk also responded to the scene. He observed the victim, later identified as Robert Clinton, lying on the ground behind the telephone truck and found a 9mm handgun, which was jammed, near Clinton's head.

Cleveland police officer William Phillips testified that shortly after the shooting on March 21, he saw Fayne driving a car in the area. He stopped Fayne and arrested him. As Phillips and his partner drove Fayne downtown for questioning, Fayne told the officers that he was involved with the shooting, it involved the Crumb Boys and the Red Hot gang, and "it had been going on for some time and was going to continue." Fayne also told the officers that he shot Clinton in self-defense.

Fayne subsequently signed a written statement, in which he described the shooting as follows:

"Today I was in the Family Dollar Store talking to one of my little dudes so Buster come in and asked if anybody got some weed and I said yea, I got some weed. He went to the car and I said I would be there in five minutes. I grabbed my weed on the side of the store. I hopped in the back of his car. I was about to sell him the weed and I looked up and when I did I saw J Rock [Clinton] talking on a cell phone and walking to the car and he had a gun in his hand in his sleeve. I pulled out my pistol and laid down on the seat and shot out the window. Then I jumped out and then Jerrell started shooting at me. He was in two-door black Berretta. I took off running while he was shooting at me. * * * "

The next day, Fayne was interviewed by Detective Leroy Gilbert regarding the shooting of Edward Jones. Fayne denied knowing Jones and further denied that he had shot him on March 19. Fayne admitted that he owned a .45 caliber automatic pistol but told Gilbert that he had left it in someone else's car.

> Subsequent testing by the police department forensics unit and the Cuyahoga County Coroner's Office indicated that there was no trace gunshot residue found on Clinton's hands. In addition, the testing indicated that the bullet removed from Clinton's body was consistent with a .45 caliber automatic weapon. The tests also indicated that the two .45 caliber shell casings recovered from the scene of Jones' shooting and the three .45 caliber shell casings recovered from the scene of Clinton's shooting all came from the same weapon.
>
> The jury subsequently found Fayne guilty of the charges as set forth above and the trial court sentenced him to a total term of twenty-three years to life in prison.

(Doc. 9, RX 14, at 2-7; State v. Fayne, No. 83267, 2004 WL 1944793, at *1-*3 (Ohio Ct. App. Sept. 2, 2004).)

Fayne, through his appellate counsel, raised four assignments of error on his direct appeal:

> 1. Appellant's Sixth Amendment right to effective assistance of counsel was deprived by Trial Court appointed defense counsel because he a) failed to make an opening statement, b) failed to present any affirmative defense of self defense, c) failed to request any witness statement after parties testified, d) failed to bring in an alibi witness to testify on the Appellant's behalf.
>
> 2. The Appellant was denied due process of law, as guaranteed by the United States and Ohio Constitutions, when he was convicted and sentenced on evidence which was insufficient as a matter of law.
>
> 3. The Appellant was denied his right to self representation pursuant to Sixth and Fourteenth Amendments to the United States Constitution.
>
> 4. The Trial Court erred when it refused to severe [sic] the indictments.

(Doc. 9, RX 12.)  On Sept. 2, 2004, the Ohio Court of Appeals affirmed his convictions.  (Doc. 9, RX 14, at 2; 2004 WL 1944793, at *1.)

Fayne failed to file a timely appeal to the Ohio Supreme Court, but filed a motion for leave to file a delayed appeal on July 21, 2005. (Doc. 9, RX 15.) On Sept. 7, 2005, the court denied his motion for leave. (Doc. 9, RX 16; State v. Fayne, 106 Ohio St.3d 1502, 833 N.E.2d 1246 (2005).)

## II. HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002). See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Fayne has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)).  Other than that, no special treatment is afforded litigants who decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

One of the grounds put forward by Fayne alleges a violation of the Ohio Constitution.  The question before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Federal habeas relief is not available for a claimed violation of state law, thus any alleged violation of the Ohio Constitution is not properly before this court.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

### III.  PROCEDURAL DEFAULT

The respondent argues that the petition should not be granted because all four claims have been procedurally defaulted through Fayne's failure to file a timely appeal to the Supreme Court of Ohio.  (Doc. 9, at 16.)

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 731 (1991); <u>Buell v. Mitchell</u>, 274 F.3d 337, 349 (6th Cir. 2001) (citing <u>Coleman v. Mitchell</u>, 244 F.3d 533, 538 (6th Cir.), <u>cert. denied</u>, 534 U.S. 977 (2001)).  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  <u>Rust v. Zent</u>, 17 F.3d 155, 160 (6th Cir. 1994) (citing <u>Manning v. Alexander</u>, 912 F.2d 878, 881 (6th Cir. 1990)).  A petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.  <u>Coleman</u>, 501 U.S. at 731-732; <u>Buell</u>, 274 F.3d at 349.

The court considers four factors to determine whether a claim has been procedurally defaulted:  (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the procedural sanction; (3) the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of the federal claim; and, (4) the petitioner must demonstrate that there was cause for him not to follow the

procedural rule, and that he was actually prejudiced by the alleged constitutional error.  Buell, 274 F.3d at 348 (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)); Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001) (quoting Maupin).

Where a state court has failed to address a prisoner's federal claim because the prisoner failed to meet a state procedural requirement, the state judgment rests on independent and adequate state procedural grounds, barring federal habeas relief.  Coleman, 501 U.S. at 729-730; Wainwright v. Sykes, 433 U.S. 72 (1977); Morales v. Coyle, 98 F.Supp.2d 849, 860 (N.D. Ohio 2000).

Fayne did not file a timely appeal to the Ohio Supreme Court, and the court denied his motion for leave to file a delayed appeal.  (Doc. 9, RX 15-16.)  The Ohio Supreme Court's denial of a motion for leave to file a delayed appeal is a procedural ruling sufficient to bar habeas review.  Bonilla v. Hurley, 370 F.3d 494, 497 (6th Cir. 2004) (per curiam), cert. denied, 543 U.S. 989 (2004); Scurlock v. Hurley, No. 2:04-CV-687, 2005 WL 1189831, at *4 (S.D. Ohio May 19, 2005); Smith v. Ohio, Dept. of Rehab. and Corr., 331 F.Supp.2d 605, 619 (N.D. Ohio 2004), aff'd, 463 F.3d 426 (6th Cir. 2006).  Such a procedural default is "an adequate and independent ground on which the state can rely to foreclose review of his federal constitutional claims."  Shabazz v. Ohio, 149 F.3d 1184, 1998 WL 384559, at *1 (6th Cir. June 18, 1998) (TABLE, text in WESTLAW).

When a petitioner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, habeas review is barred unless the petitioner can demonstrate cause for the default and actual prejudice, or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Bonilla, 370 F.3d at 497; Buell, 274 F.3d at 348.

### A. Cause for procedural default

Fayne argues that he was unable to file his appeal to the state supreme court on time because his attorney did not provide him with a copy of the appellate court decision until after the filing deadline had already passed. (Doc. 11, at 6.)

Ineffective assistance of counsel can serve as cause to overcome procedural default. Smith v. Ohio, Dept. of Rehab. and Corr., 463 F.3d 426, 432 (6th Cir. 2006) (citing Deitz v. Money, 391 F.3d 804, 809 (6th Cir. 2004)). To establish ineffective assistance of counsel, the petitioner must show that "(1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant." Deitz, 391 F.3d at 809 (citing Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)).

The failure of counsel to promptly notify his client of a decision of the Ohio Court of Appeals to deny his criminal appeal can constitute ineffective assistance of counsel. Smith, 463 F.3d at 432-435. In Smith, the petitioner's counsel did not notify him of the adverse decision of the court of appeals until days before the deadline for filing an appeal to the state high court. Id. at 429. The Sixth Circuit ruled that "counsel has a duty to inform the accused of the resolution of a proceeding in a timely fashion so that the accused retains his control over the decision to appeal." Id. at 434. The court found that "failure of Smith's counsel to inform Smith of the decision of the Ohio Court of Appeals affirming his conviction

within days of the deadline for filing of the appeal cannot be deemed 'objectively reasonable,' and thus constitutes constitutionally deficient performance." Id. at 435.  But the court found that Smith was not prejudiced, because he did not file a subsequent appeal within forty-five days[1], even after learning of counsel's failure.  Id. at 435-436.

The failure of Fayne's counsel to notify him of the adverse decision of the court of appeals in a timely fashion constitutes ineffective assistance of counsel.  Smith, 463 F.3d at 432-435.  As to the issue of cause, however, "[a] claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  Deitz, 391 F.3d at 809 (citing Edwards v. Carpenter, 529 U.S. 446, 452 (2000)).

The Ohio Supreme Court has held that "issues of ineffective assistance of appellate counsel must be raised at the first opportunity to do so."  Monzo v. Edwards, 281 F.3d 568, 578 (6th Cir. 2002) (quoting State v. Williams, 74 Ohio St.3d 454, 455, 659 N.E.2d 1253, 1254 (1996) (per curiam)).  Claims of ineffective assistance of appellate counsel must be raised in a motion for reconsideration before the Ohio Court of Appeals.  Monzo, 281 F.3d at 577 (citing State v. Murnahan, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992)); Ohio App. R. 26(B).  Such a motion must be filed in the court of appeals within 90 days of the appellate judgment.  State v. Lamar, 102 Ohio St.3d 467, 468, 812 N.E.2d 970 (2004) (per curiam), cert. denied,

---

[1] A timely appeal to the Ohio Supreme Court is filed within the forty-five day period allowed under Ohio S. Ct. Prac. R. II., § 2(A)(1)(a).

543 U.S. 1168 (2005); State v. Reddick, 72 Ohio St. 3d 88, 90, 647 N.E.2d 784, 786 (1995) (per curiam). Fayne did not file such a motion at any time, neither within the first ninety days after judgment, nor within ninety days of discovering that his counsel had failed to advise him of the resolution of his direct appeal.[2] See generally Smith, 463 F.3d at 436.

All ineffective-assistance claims that Fayne could have asserted, but did not, would be defaulted under the Ohio doctrine of res judicata. Coleman v. Mitchell, 244 F.3d at 538; State v. Perry, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967) (syllabus, ¶9). See generally Edwards, 529 U.S. at 453 (ineffective assistance of counsel claim asserted as cause for another procedurally defaulted federal claim can itself be procedurally defaulted).

Thus, the claim of ineffective assistance of counsel was not presented to the state courts as an independent claim, and it cannot be used to establish cause for a procedural default. Edwards, 529 U.S. at 452; Smith, 463 F.3d at 436 n.7; Deitz, 391 F.3d at 809.

---

[2]There can be no argument of ineffective assistance of counsel to establish cause for procedural default regarding a Rule 26(B) motion for reconsideration because there is no constitutional right to an attorney in state post-conviction proceedings. Abdus-Samad v. Bell, 420 F.3d 614, 632 (6th Cir. 2005), cert. denied, 127 S.Ct. 380 (2006). See generally Lopez v. Wilson, 426 F.3d 339, 341 (6th Cir. 2005) (en banc), cert. denied, 126 S.Ct. 1880 (2006) (Rule 26(B) is collateral post-conviction procedure, not part of direct appeal); Morgan v. Eads, 104 Ohio St.3d 142, 818 N.E.2d 1157 (2004) (syllabus) (same).

IV. SUMMARY

Fayne's habeas claims have been procedurally defaulted through his failure to file a timely appeal to the Supreme Court of Ohio. Fayne has not shown cause for the default, nor has he shown that a failure to consider his claims would result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Accordingly, Fayne's habeas claims are procedurally defaulted, and the petition for a writ of habeas corpus should be denied.

RECOMMENDATION

It is recommended that the petition be denied.

Dated:   March 5, 2007               /s/ Kenneth S. McHargh
                                     Kenneth S. McHargh
                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the District Court's order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).